**STATE of Minnesota, Respondent,**

v.

**Jwan Orlando JOHNSON, Appellant.**

**No. C9–01–1193.**

Court of Appeals of Minnesota.

June 11, 2002.

Mike Hatch, Attorney General, and Amy Klobuchar, Hennepin County Attorney, Donna J. Wolfson, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Rochelle R. Winn, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and SHUMAKER, Judge.

## OPINION

R.A. RANDALL, Judge.

After a jury trial, appellant was found guilty of being a felon in possession of a firearm in violation of Minn.Stat. § 624.713, subd. 1(b), and was sentenced to 60 months in prison. Appellant appeals his conviction arguing (a) that he was illegally seized when the officer retained his identification card and ran a routine warrants check and (b) the prosecutor committed misconduct when he referred to appellant's felon status, which had been stipulated to·by the defense. Because police lacked reasonable articulable suspicion that appellant was engaged in criminal activity when they seized him, we reverse.

## FACTS

In November 2000, Brooklyn Park Officer Clayton Connolly and his partner followed a vehicle with a broken left brake light for several blocks. Connolly pulled the vehicle over using his lights, parked behind the vehicle, and approached the vehicle on the driver's side while his partner approached the vehicle on the passenger side. Both officers were armed and in uniform.

There were three occupants in the car; a male driver and female passenger the vehicle's owner were seated in the front seat. Appellant was seated in the back seat. Connolly asked the driver, Tyreese Turner, for his driver's license. Turner did not have a driver's license, but instead produced an instruction permit, which requires that a licensed driver over 18 years old be in the vehicle. Turner told Connolly that the female passenger, who was sitting in the front seat of the vehicle, owned the vehicle. When asked by Connolly if she had a driver's license or insurance, she said that she did not have a license and she could not produce proof of insurance. Connolly then asked appellant, who was seated in the backseat, if he "had ID or a driver's license." Appellant produced a Minnesota identification card. Connolly took the three identifications that the occupants produced, told the driver not to leave, went to the squad car, and ran a routine warrants check on each individual.

After approximately three to five minutes, Connolly discovered that appellant had a misdemeanor warrant for driving after revocation, removed appellant from the car, and handcuffed him. During a routine pat-down search, Connolly discovered a loaded .38 revolver in appellant's waistband and two plastic bags later identified as "fake drugs."

Appellant was then charged with being a felon in possession of a firearm. Appellant filed a pretrial motion to suppress evidence arguing: (a) the vehicle appellant was riding in was unreasonably stopped; (b) ap-

pellant was unreasonably seized when police requested appellant's identification; and (c) the search of appellant was unreasonable because it was not authorized by a warrant. The district court denied the motion to suppress the evidence. This appeal followed.

## ISSUES

I. Was appellant seized when the officer took appellant's identification and ran a warrants check?

II. Was there prosecutorial misconduct by introducing evidence of appellant's prior felony conviction?

## ANALYSIS

■ "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999) (citation omitted).

Appellant contends that he was illegally seized when the officer took his identification and ran the warrants check. He contends that under the totality of the circumstances any reasonable person would conclude that he had to provide identification when the officer requested it and that after providing his identification he was not free to leave the scene. Appellant asserts that he was illegally seized because Connolly lacked reasonable articulable suspicion to believe that appellant was engaged in criminal activity when the officer detained him and ran a warrants check.

■ We conclude that the officers validly stopped the vehicle that appellant was riding in because the officers saw a broken

left brake light which is an equipment violation. For Fourth Amendment purposes, there is a seizure when an officer stops an automobile. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Limited investigatory stops are allowed if police have reasonable articulable suspicion of a motor vehicle violation or of criminal activity. *State v. Duesterhoeft*, 311 N.W.2d 866, 867 (Minn. 1981); *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968).

After lawfully pulling the vehicle over, the police could then conduct a limited investigation. After stopping the vehicle, the officers discovered that the driver possessed only a learner's permit, which requires that someone in the vehicle over the age of 18 possess a valid Minnesota license. Because the driver told the officers that the passenger in the front seat owned the vehicle, the officers had every right to question her and determine if she had a valid driver's license. After questioning the vehicle's owner, Connolly discovered that she did not possess a valid driver's license. The police had a right to ask the driver and the owner of the vehicle for a driver's license. The police had a right to ask appellant if he had a driver's license. However, the officer had no articulable suspicion of criminal activity justifying a warrants check of appellant. Thus, he had no authority to seize appellant's ID card and run a warrant check after appellant told him that he did not have a driver's license. At no time did appellant tell the officers that he had a Minnesota driver's license. Appellant claimed no responsibility for the vehicle and the police do not dispute that. The issue is whether appellant was seized for Fourth Amendment purposes when the officers took his identification card and ran the warrants check. We do not have the issue of whether the

police could have legitimately run a warrants check on the driver.[1]

█ When there is no factual dispute, a reviewing court determines if a police officer's actions constitute a seizure and if the officer articulated an adequate basis for the seizure. *See State v. Storvick,* 428 N.W.2d 55, 58 n. 1 (Minn.1988). Not all encounters between the police and citizens are seizures. *In re Welfare of E.D.J.,* 502 N.W.2d 779, 781 (Minn.1993) (citation omitted). A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *State v. Cripps,* 533 N.W.2d 388, 391 (Minn.1995) (quotation omitted). Officers must not "convey a message that compliance with their request is required." *Florida v. Bostick,* 501 U.S. 429, 435, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991).

██ The Minnesota Constitution provides that "a person has been seized if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *Cripps,* 533 N.W.2d at 391 (citation omitted). The *Mendenhall–Royer* standard is used for judging under the totality of the circumstances. *E.D.J.,* 502 N.W.2d at 781–82. (citation omitted). Some circumstances, under the *Mendenhill–Royer* standard, that indicate if a seizure has occurred are:

> [T]he threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that

compliance with the officer's request might be compelled.

*Id.* at 781 (citation omitted).

The district court found that appellant had not been seized prior to the warrants check coming back. The district court reasoned that appellant was free to leave at any time and that the officer had no

> reason or intention of taking [appellant] into custody or preventing him from leaving, and there wasn't any evidence [appellant's] done anything wrong, because it is true that it's not an offense of the Minnesota Statutes to be in a car without a valid driver's license.

█ We disagree with the district court's conclusion that appellant was free to go at any time and, if he had left, he would not have been stopped by the police. First, because appellant never attempted to leave the vehicle, it is pure speculation that the policeman would have allowed appellant to walk away if, in response to the officer's request for identification, appellant (without responding in any way) opened a car door and attempted to start walking away. Second, the test is not whether appellant would have been allowed to leave, but whether a reasonable person would believe they were free to leave. Third, given the need for identification to conduct everyday business, it is unrealistic in today's society that a reasonable person would leave their identification behind. The United States Supreme Court has held:

> [E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure

1. *See Michigan v. Summers,* 452 U.S. 692, 701, 101 S.Ct. 2587, 2593 n. 12, 69 L.Ed.2d 340 (1981) (stating that police may request identification and run warrants check on detained person displaying suspicious conduct).

for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

*Delaware,* 440 U.S. at 663, 99 S.Ct. at 1401. When an individual has only an identification card and does not possess a driver's license, the identification card functions just like a driver's license. It is needed to cash checks, for proof of identity when applying for jobs, and other occasions when a driver's license is normally tendered. When an individual does not have a driver's license, a Minnesota identification card is just as important to the individual as a driver's license, thus making it difficult to impossible for a person simply to walk away and leave it with the police.

Not only would a reasonable person not feel free to leave his identification behind, but as a result of the show of force when stopping the vehicle, a reasonable person would feel that he was neither free to disregard the police questions nor free to terminate the encounter. The record shows that the officers pulled the vehicle over with flashing lights, parked the squad car behind the vehicle, and remained behind appellant's vehicle during the entire encounter. Appellant was seated in the back seat of the car, two policemen approached the vehicle and positioned themselves on each side of the vehicle, and the driver of the vehicle was specifically told by the officer not to go anywhere. Since we conclude that appellant was seized when the officers seized his identification and ran a warrants check, the issue remains whether appellant's seizure was supported by reasonable and articulable suspicion. *See E.D.J.,* 502 N.W.2d at 783 (holding that to justify a seizure police must articulate reasonable suspicion).

We conclude the officers lacked reasonable articulable suspicion that appellant was engaged in criminal activity to seize appellant. That is not even in dispute. The state concedes the officers had no articulable suspicion to suspect that appellant may have been engaged in illegal activity. In fact, Connolly testified that it is not a crime to be a passenger in the rear seat of the car where a driver does not have a driver's license. The officer did not testify, for instance, that because of everyone's failure to produce a driver's license, he suspected that the vehicle might have been stolen.

Connolly did testify that he requested appellant's identification to determine if there was a licensed driver in the car and if the vehicle "would be able to be driven from the scene." This argument lacks substance. He could have limited his request to asking appellant if he had a driver's license. Once Connolly determined that appellant did not have a driver's license and was not taking any responsibility for the vehicle, requesting appellant's identification, with no suspicion of criminal activity, and then taking that identification to run a warrants check was a fishing expedition, thus, unreasonable.

The district court itself formed the conclusion that the officers lacked reasonable articulable suspicion that appellant was engaged in criminal wrongdoing. The court stated:

> [T]here wasn't any evidence [appellant did] anything wrong, because it is true that it's not an offense of the Minnesota Statutes to be in a car without a valid driver's license

We reject the district court's determination that:

> [I]t would have been perfectly valid for the police officer to ask the identification of the people so he'd know who the witnesses were in case there was ulti-

mately a ticket issued for driving without a valid license and there was a trial on it and he had to find the witnesses that saw all this happen. Connolly also could have taken any information he needed.

 The officers could have taken the information they needed from appellant's identification and returned it to him. They did not have to run a warrants check to get his name and address. Police seizing everyone, even briefly, in the general vicinity where a traffic offense has been committed, without reasonable articulable suspicion that the individual was engaged in criminal activity, is the equivalent of a sobriety checkpoint roadblock. *See Ascher v. Commissioner of Public Safety*, 519 N.W.2d 183 (Minn.1994) (concluding that sobriety checkpoint roadblocks are unconstitutional without individualized articulable suspicion of criminal wrongdoing); *see also Gray v. Commissioner of Public Safety*, 519 N.W.2d 187 (Minn.1994) (determining police must have objective, individualized articulable suspicion of criminal wrongdoing by driver before driver may be subjected to investigative stop). Here, appellant was detained simply because he was a passenger in the back seat of a vehicle. Although appellant was seized for only a few minutes while the warrants check was done and, thus, the seizure was not overtly intrusive, an "[u]ncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government." *Ascher*, 519 N.W.2d at 186 (citation omitted). It is possible that some people in today's society would allow the short-term intrusion of seizing an individual's identification and running a routine warrants check to capture those with outstanding warrants. It is, however, true "that a particular law enforcement technique serves a laudable purpose has never been the touchstone of constitutional analysis." *Id.* at 187–88.

Because appellant was illegally seized, the fruits of the poisonous tree, the information resulting from the warrants check and the gun should have been suppressed. Because we reverse on the issue whether police possessed reasonable articulable suspicion to seize appellant, we do not address the issue of prosecutorial misconduct.

## DECISION

After seeing a broken taillight, police could stop a motor vehicle and conduct a limited investigation of the driver and the vehicle's owner to determine if either possessed a valid driver's license. The police could ask appellant, a passenger, if he had a driver's license and was he the licensed driver responsible for the person driving the car who had only a beginner's permit. But, the police could not then ask appellant for any type of identification, briefly detain him, and use that ID for a warrants check when, admittedly, they had no suspicion, nor claimed any, that appellant was engaged in criminal activity.

Appellant was seized for Fourth Amendment purposes when police took appellant's identification and ran a warrants check.

Police lacked reasonable articulable suspicion that appellant was engaged in criminal activity to support appellant's seizure, when appellant was merely a passenger in a vehicle that was stopped for an equipment violation and appellant had engaged in no suspicious behavior.

**Reversed.**