*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2106**

State of Minnesota,
Respondent,

vs.

Danyelle Raymon Williams,
Appellant.

**Filed December 15, 2014
Affirmed
Reilly, Judge**

Steele County District Court
File No. 74-CR-12-168

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Daniel A. McIntosh, Steele County Attorney, Julia A. Forbes, Assistant County Attorney, Owatonna, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges his conviction for driving after cancellation, inimical to public safety, arguing that (1) the district court erred by holding that the stop of appellant's vehicle was constitutionally valid, despite a finding that the stop was pretextual and based on factors other than an observed traffic violation; and (2) the district court's incomplete ruling requires a remand for further factual findings. Because we find that there was an objective basis for the traffic stop, we affirm.

## FACTS

On January 22, 2012, at approximately 1:00 a.m., a City of Owatonna police officer was traveling southbound on West Park Square approaching a red traffic light at the intersection of West Park Square and Main Street. The officer saw a minivan approach the intersection of Main Street and Oak Avenue, to his west. The minivan did not signal its turn until it was within 100 feet of the intersection. The officer turned westbound onto Main Street and attempted to catch up to the minivan. The minivan turned northbound onto Oak Avenue from Main Street and changed lanes without signaling its lane change. The minivan then turned westbound onto West Bridge Street without using its turn signal.

The officer initiated a traffic stop and identified appellant Danyelle Raymon Williams as the driver. The officer conducted a routine driver's license and vehicle check and discovered that appellant's driving privileges were revoked as inimical to public safety. The officer placed appellant under arrest. The state charged appellant with

one count of driving after cancellation, inimical to public safety in violation of Minn. Stat. § 171.24, subd. 5 (2010), and one count of failing to signal a turn in violation of Minn. Stat. § 169.19, subd. 5 (2010).

Appellant moved to suppress the evidence on the ground that there was an insufficient legal basis to stop his car and sought to dismiss for lack of probable cause. The officer testified at the omnibus hearing that as he approached the red traffic light on West Park Square and Main Street, he looked to his west and saw a minivan approach the intersection of Main Street and Oak Avenue. The officer testified that the minivan did not signal its turn until it was within 100 feet of the intersection. During cross-examination, the officer stated that he first saw the minivan driving northbound on Cedar Avenue, prior to encountering it on West Park Square.

The district court received a copy of the squad video into evidence during the omnibus hearing. Appellant's counsel questioned the officer about a separate traffic incident recorded on the video. The squad video showed that as the officer's car was stopped on North Cedar, occupants of the car in front of him were getting into and out of their car. The officer agreed that based on the squad video, it appeared that the car in front of him impeded traffic and failed to signal a turn. Appellant's attorney asked the officer why he focused on appellant's minivan, which was a block away from him, rather than on the car committing an infraction right in front of him. In response, the officer testified that "it's easier to look on my video and see it than whether I was typing or whatever I was doing and possibly missed it."

Appellant argued that it was "clear" that the officer was looking for a reason to pull over appellant's vehicle and asked the district court to determine that the stop was invalid. In response, the state argued that appellant committed traffic violations by failing to signal his turns and lane changes, which provided an objective basis for the officer to conduct a traffic stop. The district court denied appellant's motion to suppress and determined that the squad video corroborated the officer's testimony that appellant failed to signal his turns. For that reason, the district court "reluctantly" found that the traffic stop was justified.

The district court further found that the traffic stop was "pretextual" and conducted "for a reason other than the observed traffic violation." The district court faulted the officer's failure to stop the car committing a traffic violation directly in front of him in favor of appellant's minivan, which was farther away. The district court stated that it was "unclear" whether the officer pursued appellant's minivan because of the driver's race or for some other reason. However, the district court ultimately determined that there was an objective basis for the stop, and the matter proceeded to a jury trial.

At trial, appellant's counsel questioned the officer further about the other car captured on the squad video. The officer testified that he was sitting at the intersection of Cedar Avenue and Broadway Street when he saw two women run across the street and get into the car. The officer stated that he noticed the traffic violations after reviewing the squad video, although he did not observe them at the time.

With respect to appellant's vehicle, the officer testified that he had a "direct line of sight" to the minivan at the West Park Square and Main Street intersection. However, the

4

officer denied seeing the driver "at any point" while he was following the minivan with his squad car. Instead, the officer testified that he first made personal contact with appellant when he approached the minivan on Bridge Street after initiating the traffic stop. The officer testified that he did not personally see appellant until he approached the minivan on foot.

The jury found appellant guilty of driving after cancellation, inimical to public safety and not guilty of failing to signal a turn. The district court sentenced appellant to jail time and imposed a fine. This appeal followed.

**D E C I S I O N**

**I.**

Appellant challenges the district court's denial of his motion to suppress and urges this court to determine that the stop constituted an unreasonable seizure, that the officer's traffic stop was pretextual, and that the evidence obtained must be suppressed as a result. "When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). A claim involving constitutional construction is a question of law subject to de novo review. *Thul v. State*, 657 N.W.2d 611, 616 (Minn. App. 2003).

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A traffic stop constitutes a seizure implicating the Fourth Amendment. *State v. Thiel*, 846 N.W.2d 605, 610 (Minn. App. 2014), *review denied* (Minn. Aug. 5, 2014*)*. However, limited investigatory stops

5

are permissible if a law-enforcement officer has "reasonable articulable suspicion of a motor vehicle violation or of criminal activity." *State v. Johnson*, 645 N.W.2d 505, 508 (Minn. App. 2002). A reasonable articulable suspicion exists if the police officer can present "a particularized and objective basis for suspecting the seized person of criminal activity." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). The standard for such a stop is minimal, but must be based on more than "mere whim, caprice, or idle curiosity." *Marben v. State Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980). Thus, "[a] hunch, without additional objectively articulable facts, cannot provide the basis for an investigatory stop." *State v. Harris*, 590 N.W.2d 90, 101 (Minn. 1999).

The officer observed appellant's minivan make a right turn and change lanes without signaling. Minnesota law requires a driver to signal a turn "continuously during not less than the last 100 feet traveled by the vehicle before turning." Minn. Stat. § 169.19, subd. 5. Minnesota law is clear that "if an officer observes a violation of a traffic law, however insignificant, the officer has an objective basis for stopping the vehicle." *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997). The district court found that the stop was justified based on the officer's observation that appellant committed a traffic violation by failing to signal his turns. Based on appellant's observed traffic violations, the officer had an objective basis for the stop.

Appellant argues that the traffic stop was pretextual and therefore unlawful under article I, section 10 of the Minnesota Constitution. Both parties cite heavily to *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769 (1996). In *Whren*, plainclothes officers in a "high drug area" of the city saw petitioner's vehicle waiting at an intersection for an

6

"unusually long time," turn suddenly without signaling, and speed off at an "unreasonable" speed. 517 U.S. at 808, 116 S. Ct. at 1772. The officers stopped the vehicle to address the traffic violations and saw two large plastic bags of what appeared to be crack cocaine in the petitioner's hands. *Id.* at 808-09, 116 S. Ct. at 1772. The petitioner challenged the legality of the stop arguing that the officer's ground for approaching the vehicle was pretextual. *Id.* at 809, 116 S. Ct. at 1772. The district court denied the suppression motion, and the appellate court affirmed the subsequent convictions. *Id.* On certiorari review, the Supreme Court affirmed the lower courts and stated that an officer's "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813, 116 S. Ct. at 1774. The Supreme Court concluded that the vehicle stop was reasonable under the Fourth Amendment based upon the district court's finding that the officers had probable cause to believe that the petitioner violated traffic laws. *Id.* at 819, 116 S. Ct. at 1777.

Minnesota appellate courts have consistently analyzed suppression motions such as this under *Whren* and *George*, citing the *Whren* decision favorably as the appropriate standard to use in Minnesota, and we see no compelling reason to expand the constitutional protections in this case. *See, e.g.*, *George*, 557 N.W.2d at 577 n.1 ("[U]nder a *Whren* analysis, any subjective desire by [the officer] to seek evidence of other illegal activity would not have invalidated the stop, had it been otherwise valid."); *State v. Battleson*, 567 N.W.2d 69, 71 (Minn. App. 1997) (citing *Whren* for the proposition that "the actual or ulterior motives of an officer do not invalidate police action that is justifiable on the basis that a violation of law has occurred").

More recently, the Minnesota Supreme Court stated explicitly that its decisions and the decisions of the United States Supreme Court "focus not on the subjective belief of the officer, but rather on the objective basis for the belief that the defendant was engaged in illegal activity." *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004); *see also State v. Askerooth*, 681 N.W.2d 353, 374-75 (Minn. 2004) (citing *Whren* and stating that "[i]n evaluating the reasonableness of a traffic stop, the subjective intent of the police officer is not a relevant consideration"); *State v. Krenik*, 774 N.W.2d 178, 182-83 (Minn. App. 2009) (citing *Whren* and holding that a traffic stop is reasonable when the officer stopped the vehicle after observing traffic violation), *review denied* (Minn. Jan. 27, 2010).

Appellant urges this court to "explicitly recognize" broader protection under the Minnesota Constitution and find that pretextual stops are unreasonable and invalid in Minnesota. Although the Minnesota Constitution may be interpreted to afford more protection to its citizens than is provided under the United States Constitution, a decision to interpret the Minnesota Constitution more expansively than the federal constitution should not be made "cavalierly." *State v. Carter*, 596 N.W.2d 654, 657 (Minn. 1999). Typically, our supreme court has deviated from federal precedent when it has viewed the United States Supreme Court's decisions as "radical" or "sharp" departures from precedent. *Id.* That is not the case here. The district court did not err in finding that the officer had an objective basis for stopping appellant's minivan based on his observation of appellant's driving conduct, and we affirm this finding.

8

**II.**

We turn next to the issue of whether the traffic stop should be invalidated under the equal protection clause of the Fourteenth Amendment to the U.S. Constitution. It is undisputed that appellant did not raise an equal protection argument in district court. Generally, we will not consider issues that were not presented to the district court. *State v. Busse*, 644 N.W.2d 79, 89 (Minn. 2002). Nevertheless, the interests of justice may warrant consideration of constitutional issues for the first time on appeal. *Id.*

The constitutional basis for objecting to intentionally discriminatory application of laws is the equal protection clause, and not the Fourth Amendment. *Whren*, 517 U.S. at 813, 116 S. Ct. at 1774. The equal protection clause prohibits the discriminatory enforcement of nondiscriminatory laws. *City of Minneapolis v. Buschette*, 307 Minn. 60, 64, 240 N.W.2d 500, 502 (1976). Equal protection claims involving constitutional questions of law are reviewed de novo. *Thul*, 657 N.W.2d at 616.

Appellant argues that the officer impermissibly targeted appellant on account of his race. During the pretrial suppression hearing, the district court found that "this was a pretextual stop conducted by [the officer] for a reason other than the observed traffic violation." Appellant did not elicit testimony during the omnibus hearing to develop this claim. The district court also stated that it was "unclear" whether the officer chose to pursue appellant "based on the race of the driver or [for] some other reason." However, the district court did not sufficiently identify "the facts that the district court has determined to be true" in making this statement. *In re Civil Commitment of Spicer*, 853 N.W.2d 803, 811 (Minn. App. 2014). Upon review, we determine that the factual record

9

supports the finding that the stop of appellant's vehicle was constitutionally valid under *Whren* and its progeny. We have also considered the arguments raised in appellant's supplementary pro se brief and find them unpersuasive. Accordingly, we affirm the conviction.

**Affirmed.**