*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0622**

State of Minnesota,
Respondent,

vs.

Dillen James Hinkemeyer,
Appellant.

**Filed February 21, 2017
Affirmed
Larkin, Judge**

Hennepin County District Court
File No. 27-CR-15-14059

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Cheri A. Townsend, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his conviction of possession of a firearm by a prohibited person, arguing that the district court erred by denying his motion to suppress the firearm as the fruit of an unconstitutional traffic stop. We affirm.

**FACTS**

Respondent State of Minnesota charged appellant Dillen James Hinkemeyer with possession of a firearm by a prohibited person after a sheriff's deputy stopped a vehicle in which he was a passenger and discovered a shotgun in the vehicle. Hinkemeyer moved to suppress the shotgun.

The district court held an evidentiary hearing on the suppression motion. Hennepin County Sheriff's Department Deputies Tyson Donnelly and Christian Jung testified at the hearing. The district court found them credible and the relevant facts to be as follows. At approximately 1:00 a.m., Deputy Donnelly was patrolling alone in Brooklyn Center. He observed a Dodge Intrepid traveling on Interstate 694, checked the vehicle's license plates, and learned that the vehicle's owner had a suspended driver's license. Deputy Donnelly stopped the vehicle after he observed its driver change lanes without signaling.

Deputy Donnelly approached the driver, who provided a Missouri driver's license. While the driver looked for his insurance information, Deputy Donnelly noticed that the vehicle's passenger, Hinkemeyer, was acting nervous, "frantically texting" on his phone, and refusing to make eye contact. Deputy Donnelly found this behavior odd and concerning. Deputy Donnelly testified that he asked Hinkemeyer for identification, which

Hinkemeyer was unable to produce. Deputy Donnelly asked Hinkemeyer for his name. Hinkemeyer paused and provided a name that Deputy Donnelly thought was false. Deputy Donnelly then asked Hinkemeyer for his date of birth. Hinkemeyer provided his real name and date of birth. Deputy Donnelly asked Hinkemeyer if he had any active warrants, and Hinkemeyer admitted that he had an active parole-violation warrant. Deputy Donnelly confirmed that the driver's license was suspended and that Hinkemeyer had an active warrant.

Deputy Jung, a K-9 handler, arrived to assist Deputy Donnelly. The deputies arrested Hinkemeyer on the warrant, searched him incident to arrest, and found a glass methamphetamine pipe on his person. The deputies decided to do a K-9 search of the vehicle. While preliminarily searching for potential hazards to the K-9, Deputy Jung moved a duffel bag and discovered a shotgun next to the passenger seat where Hinkemeyer had been seated. The K-9 search revealed a small amount of marijuana, and a follow-up search of the duffel bag revealed a disassembled shotgun and 20-caliber shotgun shells. The deputies cited the driver for driving without a valid license, released him at the scene, and impounded his vehicle. The vehicle was later subjected to an inventory search, which did not reveal additional contraband.

As support for suppression, Hinkemeyer argued that "[t]he [deputy] illegally expanded the scope of the traffic stop by requesting [his] identification," that "the dog sniff . . . required probable cause," and that the "search . . . should not be categorized as an inventory search."

3

The district court denied Hinkemeyer's motion to suppress, concluding that "[Deputy Jung] had reasonable articulable suspicion of drug-related activity prior to moving the duffel bag and beginning the K-9 search of the vehicle," and that the "inventory search of the [vehicle] was proper" and "certainly would have revealed the shotgun had it not already been discovered." The district court did not address Hinkemeyer's argument that Deputy Donnelly improperly expanded the scope of the stop by asking Hinkemeyer for identification.

A jury found Hinkemeyer guilty of possession of a firearm by a prohibited person, and the district court sentenced him to serve 60 months in prison. This appeal follows.

### D E C I S I O N

Hinkemeyer contends that the district court erred by denying his motion to suppress. He argues that "[Deputy] Donnelly improperly expanded the scope of the stop when [the deputy] asked Hinkemeyer for his identification," and that "[b]ecause discovery of the shotgun was not inevitable, [his] conviction must be reversed."[1]

The district court did not address Hinkemeyer's argument that Deputy Donnelly expanded the scope of the traffic stop when he asked Hinkemeyer for identification. An appellate court may consider a previously unaddressed issue if it involves "a legal question and the parties had an opportunity to brief the question." *McKenzie v. State*, 872 N.W.2d 865, 872 (Minn. 2015). The factual record regarding the issue must be adequately developed. *See State v. Gauster*, 752 N.W.2d 496, 508-09 (Minn. 2008) (declining to

---

[1] Hinkemeyer does not challenge the district court's conclusion that the K-9 search was lawful.

4

consider an issue first raised on appeal, partly because the record was not sufficiently developed). Because Hinkemeyer's appellate argument was briefed by both parties and the factual record is adequately developed, we consider the issue.

The Fourth Amendment of the U.S. Constitution and article I, section 10 of the Minnesota Constitution protect "against unreasonable searches and seizures." Warrantless searches and seizures are per se unreasonable unless they fall under an established exception. *State v. Othoudt*, 482 N.W.2d 218, 221-22 (Minn. 1992) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)). The "touchstone of the Fourth Amendment is reasonableness," which "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S. Ct. 417, 421 (1996) (quotation omitted). The Supreme Court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." *Id.* The Supreme Court has also "expressly disavowed any litmus-paper test or single sentence or paragraph rule, in recognition of the endless variations in the facts and circumstances implicating the Fourth Amendment." *Id.* (quotations omitted).

Under the principles set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), a brief investigative stop based upon reasonable, articulable suspicion that an individual is engaged in criminal activity is reasonable under the Fourth Amendment. *State v. Diede*, 795 N.W.2d 836, 842-43 (Minn. 2011). The Minnesota Supreme Court applies the *Terry* principles to traffic stops. *State v. Askerooth*, 681 N.W.2d 353, 363 (Minn. 2004). The supreme court evaluates reasonableness at two levels: (1) "whether the stop was justified at its inception" and (2) "whether the actions of the police during the stop were reasonably

5

related to and justified by the circumstances that gave rise to the stop in the first place." *Id.* at 364. The scope of a *Terry* investigation is limited "to that which occasioned the stop, to the limited search for weapons, and to the investigation of only those additional offenses for which the officer develops a reasonable, articulable suspicion within the time necessary to resolve the originally-suspected offense." *Diede*, 795 N.W.2d at 845 (quotation omitted).

When reviewing orders on pretrial motions to suppress evidence and the facts are not in dispute, we review de novo whether the police articulated an adequate basis for the seizure at issue. *State v. Flowers*, 734 N.W.2d 239, 247-48 (Minn. 2007).

Hinkemeyer agrees that the traffic stop was justified at its inception. And he does not argue that the duration of the stop was unreasonable. Instead, he argues that Deputy Donnelly expanded the scope of the traffic stop by asking him for identification and that this expansion was not justified "by a reasonable, articulable suspicion of additional criminal activity."

Hinkemeyer does not cite authority establishing that asking a passenger to identify himself during a traffic stop constitutes an expansion of the initial seizure. In *State v. Johnson*, an officer took a passenger's identification card during a traffic stop and returned to the squad car to perform a warrant check. 645 N.W.2d 505, 507 (Minn. App. 2002). This court concluded that the officer's act of taking the identification card to his squad car and running a warrants check amounted to a seizure and that the police lacked reasonable articulable suspicion to justify the seizure. *Id.* at 510-11. We therefore held that the seizure

was unreasonable. *Id.* at 511. *Johnson* is readily distinguishable from this case because Deputy Donnelly did not take an identification card from Hinkemeyer.

Caselaw provides other examples of police conduct that were deemed to have unlawfully expanded traffic stops. In *Askerooth*, the Minnesota Supreme Court concluded that the police expanded a traffic stop beyond its initial scope when they placed a driver in a squad car "for convenience purposes." 681 N.W.2d at 367. In *State v. Fort*, the supreme court concluded that an officer's questioning of a passenger regarding the presence of narcotics and weapons expanded the initial scope of a traffic stop. 660 N.W.2d 415, 416-17, 419 (Minn. 2003).

On the other hand, the Minnesota Supreme Court has stated that officers may remove a passenger from a vehicle during a traffic stop for officer safety purposes. *State v. Ortega*, 770 N.W.2d 145, 152 (Minn. 2009); *see also Maryland v. Wilson*, 519 U.S. 408, 414-15, 117 S. Ct. 882, 886 (1997). And in *State v. Krenik*, this court held that "a police officer does not need an individualized justification for directing a passenger in a legally stopped vehicle to get out of the vehicle." 774 N.W.2d 178, 179 (Minn. App. 2009), *review denied* (Minn. Jan. 27, 2010).

Federal caselaw is also instructive. The United States Court of Appeals for the Eighth Circuit has stated that an "officer making a traffic stop does not violate the Fourth Amendment by asking the driver his destination and purpose" and that an officer "may undertake similar questioning of the vehicle's occupants to verify the information provided by the driver." *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002); *accord United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004). The United States Court of Appeals

7

for the Tenth Circuit has stated that "because passengers present a risk to officer safety . . . an officer may ask for identification from passengers and run background checks on them." *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) (citing *United States v. Jenson*, 462 F.3d 399, 403-04 (5th Cir. 2006); *United States v. Purcell*, 236 F.3d 1274, 1278 (11th Cir. 2001)).

Indeed, courts frequently acknowledge the officer-safety concerns attendant to traffic stops. For example, the Minnesota Supreme Court has stated:

> We recognize the very real safety concerns associated with traffic stops in the early morning by officers working without a partner. We explicitly acknowledged the importance of officer safety in *Varnado*. 582 N.W.2d at 891 (stating "we agree that officer safety is a paramount interest"). The Supreme Court has similarly acknowledged the dangers confronted by the police during traffic stops.

*Askerooth*, 681 N.W.2d at 368.

The preceding cases inform our de novo determination regarding whether Deputy Donnelly unreasonably expanded the traffic stop by asking Hinkemeyer to identify himself. Unlike the cases in which officers were found to have unlawfully expanded traffic stops, Deputy Donnelly did not take possession of Hinkemeyer's identification card, place him in a squad car, or ask him whether there were any illegal items in the vehicle or on his person. Based on the caselaw discussed above, we are hard-pressed to conclude that Deputy Donnelly's questions to ascertain Hinkemeyer's identity violated the Fourth Amendment.

Under the totality of the circumstances, Deputy Donnelly's questions regarding Hinkemeyer's identity were a reasonable component of the traffic stop and did not

8

unlawfully expand the stop. We therefore affirm the district court's denial of Hinkemeyer's motion to suppress without addressing Hinkemeyer's argument regarding the inevitable-discovery doctrine.

**Affirmed.**