*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0260**

State of Minnesota,
Respondent,

vs.

Wendy Sue Whitcomb,
Appellant.

**Filed November 3, 2025**
**Affirmed**
**Worke, Judge**

Waseca County District Court
File No. 81-CR-23-266

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Rachel V. Cornelius, Waseca County Attorney, Waseca, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Christopher T. Ruska, Special Assistant Public Defender, Nilan Johnson Lewis PA, Minneapolis, Minnesota; and

Luke J. Wolf, Special Assistant Public Defender, Spencer Fane LLP, Minneapolis, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Cleary, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**WORKE**, Judge

Appellant challenges her conviction for fifth-degree controlled-substance possession and possession of drug paraphernalia, arguing that law enforcement did not have reasonable, articulable suspicion for the seizure and expanded stop, and lacked probable cause to search personal property within her vehicle. We affirm.

## FACTS

The following facts are from the record of the suppression hearing held before the district court. On the morning of March 8, 2023, appellant Wendy Sue Whitcomb drove her vehicle into a ditch in rural Waseca County. The weather conditions were clear, and there was no ice, frost, or other impaired road conditions. A passerby called the police, reporting the vehicle's location and that the driver appeared to be under the influence.

Deputy #1 was the first officer to arrive. While talking with Whitcomb, Deputy #1 noticed that she avoided eye contact, her responses were brief, she had involuntary body movements, her fingers were fidgety, and she was unable to sit still in the driver's seat. When Deputy #1 asked Whitcomb for her driver's license, he observed that it took her "an abnormal amount of time" to locate it, and she passed over it at least once while searching through a pile of cards. Deputy #1 also saw a butane lighter in the vehicle, which, based on his training and experience, he knew was commonly used to smoke methamphetamine. The vehicle was unable to be backed out of the ditch. Whitcomb was unsuccessful in calling a friend to assist her; Deputy #1 called a tow truck.

Deputy #2, on his way into work, heard the call for service dispatched to Deputy #1 and responded to the scene. While in transit to the scene, he called Deputy #1 to assess the unfolding events.

When Deputy #2 arrived, Deputy #1 relayed his observations and associated concerns. Deputy #1 told Deputy #2 his observations indicated to him that Whitcomb was an "old user" because she had a "tweak movement to her"; he did not believe that she was currently under the influence. While Deputy #2 conversed with Whitcomb, he noticed that she swayed back and forth toward the steering wheel with her head down, was evasive in answering questions, avoided eye contact, and was overly nervous and fumbling with her fingers. Deputy #2 asked Whitcomb when she last used methamphetamine. Whitcomb answered, "A long time." Deputy #2 asked if there was anything in the vehicle. Whitcomb answered, "Not that I know of." Deputy #2 testified that, based on his training and experience, this was the response of someone attempting to "separate themselves from what they really know."

When the tow truck arrived, Deputy #2 asked Whitcomb to exit the vehicle. Upon Whitcomb's exit, Deputy #2 observed an eyeglass case on the floor by Whitcomb's feet with tissue paper sticking out of it. Deputy #2 testified that, based on his training and experience, it is common for individuals who use controlled substances to conceal their paraphernalia in an eyeglass case. Deputy #2 opened the case and found a glass pipe typically used for smoking methamphetamine. Deputy #2 asked Whitcomb where the rest of the drugs were. She stated, "[M]aybe in my purse." Whitcomb handed Deputy #2 her

purse, in which two baggies with a substance testing positive for methamphetamine were found.

Respondent State of Minnesota charged Whitcomb with fifth-degree controlled-substance possession and possession of drug paraphernalia. Whitcomb moved the district court to suppress the evidence, arguing that the deputies expanded the scope of the traffic stop without reasonable, articulable suspicion. The district court denied the motion.

The district court held a stipulated-facts proceeding and found Whitcomb guilty as charged. The district court stayed imposition of Whitcomb's sentence, pursuant to Minn. Stat. § 609.315 (2022). This appeal followed.

## DECISION

### *Reasonable Suspicion*

Whitcomb argues that the district court erred when it denied her motion to suppress the evidence because the seizure was unlawful. This court reviews a district court's reasonable-suspicion determination de novo, accepting the district court's factual findings unless clearly erroneous, and deferring to its credibility determinations. *Kruse v. Comm'r of Pub. Safety*, 906 N.W.2d 554, 557 (Minn. App. 2018).

Law enforcement may temporarily seize an individual when there is reasonable, articulable suspicion that the person stopped is, or is about to, engage in a crime. *Id.* Police must also have reasonable, articulable suspicion to investigate matters unrelated to the initial reason for the stop. *State v. Askerooth*, 681 N.W.2d 353, 365 (Minn. 2004). "In determining whether reasonable suspicion exists, Minnesota courts consider the totality of

4

the circumstances and acknowledge that trained law enforcement officers are permitted to make inferences and deductions that would be beyond the competence of an untrained person." *Kruse*, 906 N.W.2d at 557 (quotation omitted). Reasonable, articulable suspicion cannot be based on "whim, caprice or idle curiosity." *Id.* (quotation omitted).

Police may use their "collective knowledge," which may not be known to the officer on scene, to justify an investigatory seizure. *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 559-60 (Minn. App. 2005). A seizure occurs when, under the totality of the circumstances, a reasonable person would have concluded that they are not free to terminate the encounter. *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). "[T]he test is not whether [the] appellant would have been allowed to leave, but whether a reasonable person would believe they were free to leave." *State v. Johnson*, 645 N.W.2d 505, 509 (Minn. App. 2002).

Whitcomb claims that when Deputy #1 told Deputy #2 that his observations led him to conclude that she was not intoxicated, this "dispelled" any use of that information for further investigatory purposes. Thus, Deputy #2 did not have reasonable suspicion to investigate further. We disagree.

Here, Deputy #1 did not conduct a "stop"; rather, the deputy arrived to determine whether Whitcomb needed assistance. *See State v. Hanson*, 504 N.W.2d 219, 220 (Minn. 1993) ("A reasonable person would have assumed that the officer was not doing anything other than checking to see what was going on and to offer help if needed.").

Deputy #1 had information from the initial caller that Whitcomb was possibly intoxicated. And Deputy #1 observed indicia of potential intoxication, including

5

Whitcomb's vehicle in a ditch on a clear day with no road impairments and Whitcomb's involuntary movements. Deputy #1 informed Deputy #2 of his observations and stated that he concluded that Whitcomb was not intoxicated. But Deputy #2 responded, "Something just doesn't add up." Deputy #1 indicated his agreement by responding, "Ya, . . . I don't know what it is." Deputy #1 then indicated he would attempt to verify the information Whitcomb provided. Thus, Deputy #1 agreed with Deputy #2 that the situation was suspicious and required further investigation.

When Deputy #2 arrived and started questioning Whitcomb, this was a valid seizure. The officers' collective knowledge—Deputy #1's observations and Deputy #2's understanding of those observations based on his training and experience—provided Deputy #2 with reasonable, articulable suspicion to seize Whitcomb and continue investigating whether Whitcomb was intoxicated and/or in possession of controlled substances. The district court appropriately denied the motion to suppress after concluding that law enforcement had reasonable suspicion to investigate for impaired driving.

***Probable Cause to Search***

Whitcomb next argues that Deputy #2 did not have probable cause to search the eyeglass case in her vehicle. Under the automobile exception to the warrant requirement, law enforcement may search a vehicle, and closed containers within it, when probable cause exists that the vehicle contains evidence or contraband. *State v. Lester*, 874 N.W.2d 768, 771 (Minn. 2016). Probable cause is a "common-sense, nontechnical concept" that, under the totality of the circumstances, would lead a reasonable person to conclude that there is a "fair probability that contraband or evidence of a crime will be found in a

particular place." *State v. Torgerson*, 995 N.W.2d 164, 169 (Minn. 2023) (quotations omitted). Because police interpret situations differently than an untrained person, we give "due weight" to their reasonable inferences and to a district court's "finding that the officer was credible and the inference was reasonable." *Lester*, 874 N.W.2d at 771 (quotation omitted).

Whitcomb relies on *State v. Flowers*, 734 N.W.2d 239 (Minn. 2007), to support her argument that the deputy lacked probable cause to search her vehicle. In *Flowers*, officers followed Flowers's vehicle to initiate a stop for an equipment violation. 734 N.W.2d at 243. Flowers did not immediately stop; instead, he slowly drove down an alley and made "furtive movements following the officers' indication that he stop." *Id.* at 243, 248. The supreme court determined that the officer did not have probable cause to search the vehicle based on Flowers's furtive movements—the supreme court stated that there must be more facts to support probable cause. *Id.* at 248-49.

Here, unlike *Flowers*, there are more facts supporting probable cause. Deputy #1 saw Whitcomb's vehicle in a ditch on a day with clear weather and no road impairments. Law enforcement had received a tip from a caller that Whitcomb appeared intoxicated. Deputies noticed multiple signs of impairment and objects indicating drug use. Whitcomb admitted to the deputies that she had a history of drug use. When Whitcomb exited the vehicle, Deputy #2 observed the eyeglass case with tissue paper sticking out of it, which his training and experience indicated was "where common meth users put and protect their glass meth pipe, [and will] put paper towels or something to protect it so it does not break."

7

These additional facts provided probable cause to search Whitcomb's eyeglass case. The district court did not err by denying Whitcomb's motion to suppress the evidence.

**Affirmed.**