STATE of Minnesota, Respondent,

v.

Heidi Anna CRIPPS, Appellant.

No. C9–93–2197.

Supreme Court of Minnesota.

May 19, 1995.

Rehearing Denied July 6, 1995.

John M. Stuart, State Public Defender, Marie L. Wolf, Asst. Public Defender, Minneapolis, and Mony R. Ghose, Paul P. Kempf, Boris Zelkind, Sp. Asst. Public Defenders, Kinney & Lange, Minneapolis, for appellant.

Ross Arneson, Blue Earth County Atty., Douglas E. Sinclair, Asst. Blue Earth County Atty., Mankato, and Hubert H. Humphrey, III, Atty. Gen., St. Paul, for respondent.

## OPINION

ANDERSON, Justice.

Defendant, Heidi Anna Cripps, was drinking alcohol in a Mankato, Minnesota bar when a police officer approached her and asked to see her identification. Cripps gave the officer a false identification and she was arrested. Cripps was charged for using another's name and date of birth to a police officer, for displaying another's driver's license, and for consuming alcohol while under the age of 21. Cripps moved to suppress all evidence obtained after the officer first approached her in the bar and asked to see identification. The trial court denied Cripps' motion to suppress, concluding that Cripps had not been seized when the officer asked to see her identification. After a bench trial on stipulated facts, the court found Cripps guilty of using another's name and date of birth to a police officer and of consuming alcohol while under the age of 21. The Minnesota Court of Appeals affirmed. We reverse the court of appeals and hold that the officer seized Cripps when the officer asked to see Cripps' identification. We also hold that the officer failed to articulate sufficient individualized suspicion of criminal activity to justify the seizure.

On the evening of December 16, 1992, defendant Heidi Anna Cripps and a companion, Lisa Daberkow, were sitting alone at a table and drinking alcohol at The Albatross, a licensed liquor establishment in Mankato, Minnesota. That evening, two armed and uniformed Mankato police officers, Sara DeLong and Ann Walsh, conducted a "directed patrol" of some local bars. During the directed patrol, the officers checked the legal identification of bar patrons to enforce minimum age requirements for alcohol consumption. Prior to that evening, Officer DeLong had not conducted a directed patrol. The directed patrol was apparently part of her police training.

The two officers first checked identifications at a bar called The Caledonia. Officer DeLong checked the identifications of approximately seven patrons and made no arrests. At 11 p.m., the two officers proceeded to another bar, The Albatross, which was located near the Mankato State University campus. When asked at the omnibus hearing whether the crowd at The Albatross that evening appeared to be "older," "middle-aged," or "young," Officer DeLong testified that the crowd appeared to be "younger." When asked what criteria she used to ask for identifications, Officer DeLong testified that "[i]t was basically just the first person I came up to in the bar." When asked whether any patrons in the bar that evening would

not be asked to produce identification, Officer DeLong responded "no."

Officer DeLong approached Cripps and Daberkow and asked to see their identifications. Cripps held a half-empty beer bottle in her hand. Daberkow presented a valid Minnesota driver's license showing her to be over the age of 21. Cripps produced a valid Wisconsin driver's license bearing the name Shelbea R. Sadusky and showing her to be 23 years old. In Officer DeLong's opinion, however, the picture on the Wisconsin license bore little resemblance to Cripps. Officer DeLong asked Officer Walsh to look at the identification.[1] Officer Walsh asked Cripps what her name was and Cripps responded "Shelbea Rae Sadusky." Officer Walsh then asked Cripps to move to a separate table, where she asked Cripps to state her address and zip code. Cripps could not, indicating that she had lived at the residence for only three months. Becoming suspicious, Officer Walsh asked Cripps to accompany her outside to the squad car.

Officer DeLong then questioned Daberkow, who revealed Cripps' real name. Officer DeLong relayed the information to Officer Walsh. When confronted, Cripps acknowledged who she was and admitted that she was only 20 years old. Cripps also indicated that the Wisconsin license belonged to her sister, who had not given Cripps permission to use the license. The officers then arrested Cripps.

Cripps was later charged by complaint in Blue Earth County District Court on the following three counts: using the name and date of birth of another person to a police officer for the purpose of falsely identifying oneself to the police officer, a gross misdemeanor, in violation of Minn.Stat. § 171.22, subd. 1(9) (1992); displaying or representing as one's own any driver's license or Minnesota identification card not issued to that person, a misdemeanor, in violation of Minn. Stat. § 171.22, subd. 1(3); and consumption

of alcohol by a person under the age of 21 years, a misdemeanor, in violation of Minn. Stat. § 340A.503, subd. 1(2) (1992).

The trial court held an omnibus hearing and subsequently denied Cripps' motion to suppress all evidence obtained after Officer DeLong first asked to see Cripps' identification. The Minnesota Court of Appeals denied discretionary pretrial review. Cripps then agreed to a *Lothenbach* trial[2] at which both she and the state stipulated to the facts. The state dismissed the count for displaying or representing as one's own any driver's license or Minnesota identification card not issued to that person. Based on the stipulated facts, the trial court found Cripps guilty of using another's name and date of birth to a police officer and of consuming alcohol while under the age of 21. In an unpublished opinion, the court of appeals affirmed Cripps' conviction. *State v. Cripps,* No. C9–93–2197, 1994 WL 385651 (Minn.App., filed July 26, 1994). Cripps petitioned this court for review. We reverse.

### I.

Cripps argues that she was seized in the bar after Officer DeLong first asked to see her identification; therefore, Cripps argues, before seizing her, Officer DeLong must have had an articulable individualized suspicion of criminal activity to justify the seizure. Cripps contends that Officer DeLong did not articulate sufficient individualized suspicion, and therefore, all evidence obtained after Officer DeLong first asked to see Cripps' identification must be suppressed as the fruit of an illegal seizure. The court of appeals disagreed and held that Officer DeLong did not seize Cripps, and therefore, Cripps voluntarily gave Officer DeLong the false identification. The court of appeals did not reach the issue of individualized suspicion.

Not all contact between citizens and police constitutes a seizure. *Matter of Welfare of E.D.J.,* 502 N.W.2d 779, 781

---

[1]. It is not clear from the record whether both officers approached Cripps and Daberkow at the same time or whether Officer Walsh joined Officer DeLong only after Officer DeLong concluded that the picture on the license did not match Cripps.

[2]. A criminal defendant may seek to expedite appellate review of a pretrial evidentiary ruling by stipulating to the state's case and waiving a jury trial. *State v. Lothenbach,* 296 N.W.2d 854, 857 (Minn.1980).

(Minn.1993). A seizure occurs "'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)). For purposes of Article I, Section 10 of the Minnesota Constitution, which prohibits unreasonable searches and seizures, a person has been seized if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter. *See Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *E.D.J.,* 502 N.W.2d at 781–82. The reasonable person standard is an objective standard which ensures that the scope of article I, section 10 protection does not vary with a particular person's subjective state of mind. *See Michigan v. Chesternut,* 486 U.S. 567, 574, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988). We have generally held that a reasonable person would not believe that he or she has been seized when an officer merely approaches that person in a public place and begins to ask questions. *E.D.J.,* 502 N.W.2d at 782.

■ The issue in the present case is whether, considering the totality of the circumstances, an objectively reasonable person in Cripps' situation would have believed that he or she was neither free to disregard the officer's questions nor free to terminate the encounter when the officer approached that person in a bar and asked to see identification for proof of legal age to consume alcohol.

Cripps was seated in a bar when at least one uniformed officer approached her. Officer DeLong openly displayed her badge and she was armed. Cripps watched Officer DeLong check the identifications of other patrons in the bar before Officer DeLong approached her. Officer DeLong asked Cripps and her companion for identification. By asking Cripps to produce identification, Officer DeLong was asking Cripps to prove that she was of legal age to consume alcohol. Officer DeLong's request, therefore, involved more than a simple inquiry into Cripps' identity. Under these circumstances, we conclude that an objectively reasonable person would have believed that he or she was neither free to disregard the officer's request nor free to terminate the encounter, knowing that he or she was being asked to prove his or her innocence of the crime of underage consumption of alcohol. *Cf. State v. Kearns,* 75 Haw. 558, 867 P.2d 903, 907–08 (1994) (holding that a reasonable person would believe that he or she has been seized when an officer approaches that person for the express purpose of investigating him or her for specific criminal violations and begins to ask for information).

We hold that under the facts of this case, Cripps was seized within the meaning of Article I, Section 10 of the Minnesota Constitution after Officer DeLong first asked her to produce identification for the purpose of showing that she was of legal age to consume alcohol.

■ Having concluded that Cripps was seized when Officer DeLong asked her to produce identification, we must now address Cripps' argument that Officer DeLong failed to articulate a sufficient individualized suspicion of criminal activity to justify the seizure. Because the court of appeals held that Officer DeLong had not seized Cripps, it did not reach the issue of reasonable suspicion.

■ A police officer may stop and temporarily seize a person to investigate that person for criminal wrongdoing if the officer reasonably suspects that person of criminal activity. *Ascher v. Commissioner of Pub. Safety,* 519 N.W.2d 183, 184–85 (Minn.1994). To reasonably suspect a person of criminal activity, the officer's suspicion must be based on specific, articulable facts. *Id.* The officer must be able to articulate at the omnibus hearing that he or she had a particularized and objective basis for suspecting the seized person of criminal activity. *Berge v. Commissioner of Pub. Safety,* 374 N.W.2d 730, 732 (Minn.1985). An officer may make this assessment on the basis of all the circumstances and may draw inferences and deductions that might elude an untrained person. *Id.* The officer, however, must be able to

point to objective facts and may not base his or her conclusion on a "hunch." *State v. Johnson,* 444 N.W.2d 824, 825–26 (Minn. 1989).

In the present case, the issue is whether Officer DeLong articulated an objective, individualized suspicion that Cripps was engaged in criminal activity.[3] The record does not indicate whether Officer DeLong asked Cripps to produce identification because of her youthful appearance or simply because Cripps was present in the bar. During the omnibus hearing, the following exchange took place between Officer DeLong and the assistant county attorney:

Q. Did you talk to various people regarding their age and who they were?

A. Yes, I did. When I entered the Albatross, I started asking for ID's at the bar. I asked approximately five or six people to see their ID's.

Q: What criteria did you use to pick out those persons you would ask that information?

A: It was basically just the first person I came up to in the bar. There weren't very many people in the bar that evening.

Q: Now, how would you describe the crowd there that night, older crowd, middle-aged, young?

A: Young, I'd say younger crowd.

Q: Pardon?

A: It was a younger crowd.

Q: Did you have reason to believe that the people you were asking were about or around the age of perhaps 20, 21, 22?

A: Yes.

Q: Okay. If they were older and obviously in their 30's—

[Defense counsel]: Objection to the leading questions at this time, your Honor.

THE COURT: I think it's, it would save some time, but I think you probably would avoid leading questions.

Q: [by assistant county attorney] Were there any persons that you would not ask for such information?

A: No.

 There is no specific mention of Cripps in this testimony. The state asserts that "[w]hile this particular bar was 'targeted' for investigation, the police inquiries were limited to those patrons, including [Cripps], who were within that age group which would reasonably be suspect of a law violation." Aside from the inconclusive excerpt reproduced above, no direct support for the state's assertion exists in the record. If the state's assertion were true, then, at the omnibus hearing, Officer DeLong would have been able to articulate an individualized suspicion with respect to Cripps. But at the hearing, Officer DeLong failed to articulate a sufficient basis to demonstrate that she possessed an individualized suspicion that Cripps was engaging in criminal activity, and because Officer DeLong failed to do so, we cannot conclude that the seizure was justified. Our holding does not imply that Officer DeLong could not have possessed the requisite individualized suspicion to justify the seizure. An officer can justify an investigative seizure of a person who is in a bar if that person appears to the officer to be under the legal age to consume alcohol. In the present case, however, no evidence exists in the record with respect to Officer DeLong's conclusions regarding Cripps' individual appearance.

We hold that Cripps was seized after Officer DeLong first asked to see her identification for proof of legal age to consume alcohol and, based on the record, we cannot conclude that Officer DeLong had a sufficient individualized suspicion of criminal activity by Cripps to justify the seizure. Therefore, all evidence obtained after Officer DeLong requested identification must be suppressed as the fruit of an illegal seizure. *See E.D.J.,* 502 N.W.2d at 783.

Reversed.

---

3. Officer Walsh did not testify at the omnibus hearing.