*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0357**

State of Minnesota,
Respondent,

vs.

Chris William Savage,
Appellant.

**Filed January 12, 2015
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR1110530

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Reyes, Judge; and Crippen, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REYES**, Judge

On appeal from his conviction of second-degree controlled-substance crime, appellant Chris Savage argues: (1) the evidence police obtained after they stopped appellant must be suppressed because police did not have articulable, particularized facts to justify stopping appellant; (2) the evidence that police discovered after they pat searched appellant should have been suppressed because police did not have a reasonable, articulable suspicion that appellant was armed and dangerous; and (3) the evidence police obtained as a result of the drug-detection dog sniff must be suppressed because police did not have a reasonable, articulable suspicion of drug activity to expand the scope of appellant's detention. We affirm.

## FACTS

Around 10:00 p.m. on the night of June 27, 2010, police officers executed a search warrant at a residence located in Maple Grove. The warrant authorized a search of the residence and its appurtenant structures based on probable cause that methamphetamine would be located inside the home.[1] While executing the search warrant, officers found "a white crystalline substance that was consistent with the appearance of methamphetamine," along with glass bubble pipes, baggies, and false containers. The officers also found a false container that looked like a Dr. Pepper pop can but with a twist-off lid and a hollow inside filled with baggies containing a substance that appeared

---

[1] The warrant application did not mention Savage or his car.

to be methamphetamine residue. The officers testified that these types of false containers are often used to conceal drugs and cash.

Around 1:30 a.m., while the officers were securing the residence and carrying equipment to their unmarked cars, a car pulled into the driveway. Officer Daniel Irish approached the driver's side of the car, identified himself as a police officer, and identified the driver as appellant Chris William Savage. While speaking with Savage, Officer Irish saw a Dr. Pepper can in the center console that was "kind of beat up and dirty." Suspecting the can was another false container containing contraband, Officer Irish ordered Savage to exit the vehicle. Savage was pat searched for weapons, and the officers found $912 in cash. A K-9 unit was called to sniff-search the vehicle.

During the dog sniff, the K-9 alerted at the driver's door and then again on the Dr. Pepper can. The officers opened the can and found suspected methamphetamine inside. The officers then completed a search of the entire car. In the trunk, they found a WD-40 can with a screw-off bottom that contained a bag of "similar crystalline substance that appeared to be methamphetamine." Savage was arrested and charged with second-degree controlled-substance crime.

Before trial, Savage filed a motion to suppress evidence seized in the search. Following an evidentiary hearing, the district court filed an order denying Savage's motion to suppress. Savage waived his right to a jury trial and agreed to submit the case on stipulated evidence pursuant to Minn. R. Crim. P. 26.01, subd. 4. Based on the stipulated evidence—including police reports, Minnesota Bureau of Criminal Apprehension test results, and certified copies of Savage's prior controlled-substance

3

offenses—the district court found Savage guilty. Savage filed this appeal to challenge the denial of his suppression motion.

**D E C I S I O N**

When reviewing a district court's pretrial order on a motion to suppress evidence, "we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Jordan*, 742 N.W.2d 149, 152 (Minn. 2007). A finding of fact is clearly erroneous if, after reviewing the record, this court "reaches the firm conviction that a mistake was made." *State v. Kvam*, 336 N.W.2d 525, 529 (Minn. 1983). We review de novo a district court's determination that there existed a reasonable, articulable suspicion justifying a search. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000).

**I.      Constitutionality of the Seizure**

The Fourth Amendment to the United States Constitution and Article I, section 10 of the Minnesota Constitution guarantee an individual's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Evidence resulting from an unreasonable seizure or other constitutional violation usually must be suppressed. *State v. Jackson*, 742 N.W.2d 163, 177-78 (Minn. 2007); *State v. Harris*, 590 N.W.2d 90, 97 (Minn. 1999). "Warrantless searches and seizures are *per se* unreasonable unless they fall under an established exception." *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967)). However, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion

4

that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968)).

Savage argues that the police officers unconstitutionally seized him when he pulled into the driveway because they lacked any reasonable suspicion that he was engaged in criminal activity. To address this issue, we must determine (1) at what point Savage was seized and (2) whether the police had a reasonable, articulable suspicion at the time of the seizure.

### A. When the Seizure Occurred

Savage claims that he was seized as soon as he arrived at the premises. He makes several arguments as to why this seizure was unjustified, arguing that the search of the residence was already completed by the time he arrived, stating that proximity to a crime alone cannot justify a seizure, and pointing to the officers' own testimony that they did not think Savage had done anything to indicate criminal activity when he first arrived.

Savage's arguments rest on an improper assumption—that he was seized immediately upon arriving on the scene. Not all contacts between police and an individual constitute a seizure of the individual. *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn. 1993) (citation omitted). Instead, a seizure occurs if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995); *see State v. Lopez*, 698 N.W.2d 18, 21 (Minn. App. 2005) (stating that "[i]n determining whether a seizure has occurred, the court determines whether a police officer's actions would lead a reasonable

5

person under the same circumstances to believe that she was not free to leave"). In adopting this standard, the Minnesota Supreme Court articulated a number of factors that might illustrate when a seizure has taken place: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *E.D.J.*, 502 N.W.2d at 781.

It is undisputed that Savage entered the driveway voluntarily. That the officers simply approached Savage upon his arrival does not automatically raise the level of the encounter to a seizure. Generally, "the mere act of approaching a person who is standing on a public street or sitting in a car that is parked and asking questions is not a 'seizure.'" *E.D.J.*, 502 N.W.2d at 782. Here, the officers simply approached Savage, identified themselves as police, and asked for identification. While there were multiple officers at the scene, there was no evidence of threatening conduct or the display of a weapon. Savage was never physically touched and nothing indicates that the officers used a tone implying that his compliance was compulsory.

While the initial conversation did not constitute a seizure, Savage was certainly seized once he was told to get out of the car. *E.D.J.*, 502 N.W.2d at 782 (concluding that a seizure occurred when police directed E.D.J. to stop). At that moment, a reasonable person would not have believed that that he was "free to disregard the police questions nor free to terminate the encounter." *Cripps*, 533 N.W.2d at 391.

6

## B.     Whether the Seizure was Justified

A "police officer . . . [may] stop and temporarily seize a person to investigate that person for criminal wrongdoing if the officer reasonably suspects that person of criminal activity." *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011) (quotation omitted).  An appellate court "review[s] de novo a district court's determination of reasonable suspicion of illegal activity." *State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012).

"The reasonable-suspicion standard is not high," *Diede*, 795 N.W.2d at 843 (quotation omitted), and is "less demanding than probable cause or a preponderance of the evidence," *Smith*, 814 N.W.2d at 352 (quotation omitted).  But "it still requires at least a minimal level of objective justification." *Id.* (quotation omitted).  "Reasonable suspicion must be particularized and based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* (quotations omitted).  "To be reasonable, the basis of the officer's suspicion must satisfy an objective, totality-of-the-circumstances test," which "ask[s] whether the facts available to the officer at the moment of the seizure would warrant a man of reasonable caution in the belief that the action taken was appropriate." *Id.* at 351–52 (quotations omitted).

The district court found that Officer Irish was justified in ordering Savage out of the vehicle because he had observed a beat up and dirty Dr. Pepper can that appeared to have a false bottom in Savage's center console.  Savage contends this finding was clearly erroneous because Officer Irish's testimony appears to state that Savage was removed from the vehicle before the Dr. Pepper can was observed.  The testimony Savage relies on is as follows:

> Q: Okay. And what happened while you were speaking with him?
>
> A: I identified him, and eventually I asked him to get out of the vehicle.
>
> Q: For what purpose?
>
> A: Just to speak with him further. And then as I was initially talking to him, I observed a pop can that was sitting in the center console that looked suspicious to me.

From this specific portion of testimony, it appears Officer Irish observed the pop can while he was initially talking to Savage and not after Savage got out of the car. The remaining portions of Officer Irish's testimony support this reading. Two questions after Officer Irish gave the above testimony, the following testimony was given:

> Q: What happened after you observed that pop can?
>
> A: Well, I guess I had the defendant exit the vehicle. . . .

And on re-direct:

> Q: Before you asked Mr. Savage to leave the vehicle, had you already seen the pop can in the vehicle?
>
> A: Yes.

And again on re-cross:

> Q: When you opened the door and ordered him out of [the] vehicle?
>
> A: No, I saw it before that, sir.

This testimony makes clear that Officer Irish observed the pop can prior to removing Savage from the vehicle. Thus, the district court's finding of fact was not clearly erroneous, and Savage's contentions to the contrary are based on a misinterpretation of the record.

8

The observation of a suspected false container justified Officer Irish's investigatory seizure. Police officers may rely on their experience and training, and "may draw inferences and deductions that might elude an untrained person." *Cripps*, 533 N.W.2d at 391. Officer Irish testified that the can looked suspicious because of its poor condition and "from [his] training and experience while working [in] narcotics, [he's] learned that there's a lot of hidden compartment devices and [he's] run across numerous ones that have been pop cans and bottles." Officer Irish further testified that "[m]ost people that have a pop can in their center console, it's either freshly bought or it doesn't look like it was rolled down the street."

Additionally, the collective knowledge of the officers on the scene may be pooled when determining reasonable suspicion. *See In re Welfare of G. (NMN) M.*, 542 N.W.2d 54, 57 (Minn. App. 1996) ("[T]he grounds for making [an investigative] stop can be based on the collective knowledge of all investigating officers."), *aff'd*, 560 N.W.2d 687 (Minn. 1997). Another officer testified that he was on the passenger side of the vehicle when Officer Irish began his initial conversation with Savage. This officer immediately saw the Dr. Pepper can in the center console and stated that it looked identical to the Dr. Pepper can from the residence. A third officer was in the driveway nearby during the initial conversation and testified that he heard Savage say that he was at the residence to "see a friend." At this point, the officers had collectively witnessed Savage voluntarily pull into the driveway of a house where narcotics had just been found, heard him say he was there to see a friend, and observed a suspicious-looking Dr. Pepper can that looked identical to a Dr. Pepper can just found in the residence that had a false lid and

9

methamphetamine inside. Based on this knowledge, the officers had specific, articulable facts which formed a reasonable basis for suspicion of criminal activity. *See Olson v. Comm'r of Pub. Safety*, 371 N.W.2d 552, 556 (Minn. 1985) (quotation omitted) ("All that is required is that [a] stop be not the product of mere whim, caprice, or idle curiosity."). Because the standard of reasonable suspicion was met, the stop and seizure was justified.

## II.     Constitutionality of the Pat Search

Savage argues that the evidence discovered after he was pat searched should have been suppressed because police did not have a reasonable, articulable suspicion that he was armed and dangerous. To address this issue, we first determine whether the pat search was unlawful. If unlawful, we then address whether the evidence obtained by the improper search is inadmissible as "fruit of the poisonous tree."

### A.     Whether the Search was Unlawful

A police officer may conduct a limited pat search of a seized person for weapons on less than probable cause if he can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Gilchrist*, 299 N.W.2d 913, 916 (Minn. 1980) (quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880). Police officers may "stop and frisk a person when (1) they have a reasonable, articulable suspicion that a suspect might be engaged in criminal activity and (2) the officer reasonably believes the suspect might be armed and dangerous." *State v. Flowers*, 734 N.W.2d 239, 250 (Minn. 2007) (quoting *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*, 508 U.S. 366, 113 S. Ct. 2130 (1993)). During the course of a protective pat search, "an officer is entitled to seize contraband, including drug

10

paraphernalia, found during a pat search if the incriminating character of the contraband is immediately apparent to the officer such that it gives rise to probable cause for the seizure." *State v. Lemert*, 843 N.W.2d 227, 230 (Minn. 2014).

As previously mentioned, there was a reasonable suspicion to believe that Savage was engaged in criminal activity. Prior to being pat searched, Savage had voluntarily pulled into the driveway of a house where drugs had just been found, and police observed a pop can similar to one that had just been found to contain methamphetamine. While the totality of these circumstances is certainly indicative of criminal activity, there is little to suggest that Savage was armed and dangerous, which, under *Flowers*, is necessary to justify a pat search. *See Flowers*, 734 N.W.2d at 250. Accordingly, the pat search was not justified.[2]

B.    **Whether the Evidence Obtained Qualifies as "Fruit of the Poisonous Tree"**

Savage appears to argue that the methamphetamine subsequently found in the car should have been suppressed as the result of the improper pat search. "[E]vidence discovered by exploiting previous illegal conduct is inadmissible." *State v. Olson*, 634

---

[2] In *State v. Payne*, the Minnesota Supreme Court recognized that there are certain cases where the right to pat search becomes automatic. 406 N.W.2d 511, 513 (Minn. 1987). The supreme court adopted Justice Harlan's concurring opinion in *Terry*, which "makes explicit what is implicit in the majority opinion, specifically that, as Justice Harlan puts it, 'the right to frisk must be immediate and automatic if the reason for the stop is, as here, an articulable suspicion of a crime of violence.'" *Id.* (quotation omitted). Examples of crimes of violence in which an offender would likely be armed include "robbery, burglary, rape, assault with weapons, homicide, and dealing in large quantities of narcotics." *Id.* (quotation omitted). Because these crimes are dissimilar to the case at hand—at most, all the police saw was a pop can potentially containing a limited amount of drugs—the right to pat search did not become automatic.

N.W.2d 224, 229 (Minn. App. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963)), *review denied* (Minn. Dec. 11, 2001). Such evidence is "fruit of the poisonous tree" and will only be admissible if the state proves that it was "obtained by means sufficiently distinguishable to be purged of the primary taint." *Id.* (quoting *Wong Sun*, 371 U.S. at 488, 83 S. Ct. at 417).

The eventual discovery of the methamphetamine in Savage's vehicle occurred independent from the improper pat search. The doctrine of inevitable discovery permits admission of evidence obtained as a result of illegal police conduct if "the police would have obtained the evidence if no misconduct had taken place." *Harris*, 590 N.W.2d at 105 (quotation omitted). Here, the evidence obtained directly as a result of the pat search was $912 cash. Even if that evidence was completely disregarded, the officers still would have had "reasonable, articulable suspicion of drug-related criminal activity" sufficient enough to conduct a dog sniff. *See State v. Wiegand*, 645 N.W.2d 125, 137 (Minn. 2002). The officers had enough reasonable suspicion of criminal activity to ask Savage to step out of his vehicle.[3] As will be discussed further, that reasonable suspicion also justified performing a dog sniff on the vehicle, which led to a positive alert, which led to the discovery of drugs in the pop can, which led to the more expansive search of the vehicle. The $912 obtained from the improper pat search hardly enters into the equation and has no effect if excluded. Notably, it was the dog sniff, not the $912, which led to

---

[3] We note that for safety reasons, the officers did not need reasonable suspicion prior to asking Savage to step out of the vehicle. *State v. Askerooth*, 681 N.W.2d 353, 374 (Minn. 2004) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n. 6, 98 S. Ct. 330, 333 n.6 (1977)). Nevertheless, we hold that reasonable suspicion existed at that point.

the discovery of the methamphetamine. If the pat search constituted a "poisonous tree" then its only real "fruit" was the $912, not the drugs with which Savage was eventually charged with possessing. Because a reasonable suspicion existed independent of the result of the pat search, the dog sniff and the eventual discovery of the drugs would have inevitably occurred. *See Harris*, 590 N.W.2d at 105. Thus, the doctrine of inevitable discovery applies, and the drug evidence is not "fruit of the poisonous tree."

## III. Constitutionality of the Dog Sniff

Both the state and federal constitutions require an officer to have a "reasonable, articulable suspicion of drug-related criminal activity" in order to conduct a narcotics-detection dog sniff around the exterior of a motor vehicle located in a public place. *See Wiegand*, 645 N.W.2d at 132, 137. The supreme court has also held that "a dog sniff is an unreasonable search unless police have at least reasonable, articulable suspicion of criminal activity before conducting it." *State v. Carter*, 697 N.W.2d 199, 202 (Minn. 2005). As previously stated, the standard of reasonable, articulable suspicion is lower than that of probable cause. *Smith*, 814 N.W.2d at 352. But, while the requisite showing to meet the standard is "not high," *Diede*, 795 N.W.2d at 843 (quotation omitted), drug-detection dogs cannot be used "at random and without reason." *Carter*, 697 N.W.2d at 211 (quotation omitted).

Savage argues that the dog sniff was motivated by nothing more than mere whim, caprice, or idle curiosity. *See Wiegand*, 645 N.W.2d at 134. He contends that pop cans are ubiquitous and that seeing one, even one in poor condition, cannot form the sole basis for reasonable suspicion. While this may be a correct assertion, it is a gross

13

mischaracterization of the officers' observations. The officers did not base the dog sniff on the simple fact that the can was "beat up." Rather, the officers' collective knowledge indicated that: (1) the can appeared to be the type containing a false lid which, based on their experience, is commonly used to store drugs; (2) the can looked identical to a Dr. Pepper can they had just found in the searched home that did have a false lid and methamphetamine inside; and (3) Savage was at the residence to "see a friend." These factors show that the dog sniff was not based on merely a hunch, but rather a reasonable, articulable suspicion of criminal activity. *See State v. Baumann*, 759 N.W.2d 237, 241 (Minn. App. 2009) (acknowledging "the low threshold the courts have set for reasonable suspicion," and concluded that "the information [the Officer] relied upon as the basis for his suspicion was 'something more' than an unarticulated hunch and that he was able to point to 'something' that 'objectively' supported his suspicion"), *review denied* (Minn. Mar. 31, 2009); *see also State v. Martinson*, 581 N.W.2d 846, 852 (Minn. 1998) (concluding that even seemingly innocent activity can form the basis for reasonable suspicion). Accordingly, the dog sniff did not constitute an unlawful search.

The automobile exception permits the warrantless search of a vehicle if the police have probable cause to believe that the vehicle contains evidence of contraband. *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S. Ct. 2013, 2014 (1999). Probable cause exists when, looking at the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983). A drug-detecting dog alerting to a vehicle can be enough to establish probable cause to search the vehicle. *State v.*

*Pederson-Maxwell*, 619 N.W.2d 777, 781 (Minn. App. 2000). The positive alert, when combined with the officers' collective knowledge of the circumstances, was enough to establish probable cause to believe that the Dr. Pepper can in Savage's center console contained drugs. *State v. Riley*, 568 N.W.2d 518, 523 (Minn. 1997) (applying the collective knowledge approach to the probable cause determination). Because the officers had probable cause to believe the pop can contained drugs, the officers were justified in performing a search of the entirety of Savage's vehicle. *State v. Bigelow*, 451 N.W.2d 311, 311 (Minn. 1990) (holding that "if the police have probable cause to search a motor vehicle for drugs or other contraband, they may search every part of the vehicle and its contents which may conceal the object of the search"). Thus, because the search of Savage's vehicle was justified, the district court did not err in denying the motion to suppress the evidence obtained thereafter.

**Affirmed**.