*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0337**


State of Minnesota,
Respondent,

vs.

Andrew John Wondrasek,
Appellant.


**Filed April 25, 2016
Affirmed
Halbrooks, Judge**


Ramsey County District Court
File No. 62-CR-14-1457

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, St. Paul, Minnesota (for appellant)

       Considered and decided by Halbrooks, Presiding Judge; Bjorkman, Judge; and

Kalitowski, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**HALBROOKS**, Judge

Appellant challenges the district court's denial of his motion to suppress evidence and to dismiss. Because we conclude that the police had reasonable, articulable suspicion of criminal activity to justify an investigatory stop of appellant, we affirm.

**FACTS**

On February 28, 2014, an anonymous person called 911 and reported that a man was playing with a gun with a child in the front yard. Police dispatch sent Officer Joseph Allen to respond. While he was en route, dispatch informed Officer Allen and another responding officer that the anonymous person had called again to report that the man had placed the gun in the back of a white Chevy Tahoe parked in the driveway. Officer Allen arrived at the address and stopped his squad car on the street, partially blocking the driveway where a white Chevy Tahoe was parked.

Officer Allen saw a man, later identified as appellant Andrew Wondrasek, and a little boy in the front yard, standing about two feet from an open rear passenger door of the Chevy Tahoe. Officer Allen immediately ordered Wondrasek in a commanding and authoritative voice to step away from the vehicle and to show his hands. Wondrasek complied. Officer Allen then approached the Chevy Tahoe and saw what looked like the handle of a black gun in the back seat. In response to a question, Wondrasek told Officer Allen that it was a BB gun. Officer Allen's partner put herself between Wondrasek and the Chevy Tahoe. Once she did this, Officer Allen secured the weapon.

Officer Allen testified that he recognized Wondrasek from "past dealings"[1] and was aware that he is a convicted felon. After the firearm was secured, Officer Allen confirmed Wondrasek's identity and discussed with him whether he was allowed to possess a firearm. Wondrasek stated that he knew that he was not supposed to possess anything that shoots a projectile because he is a convicted felon. The two officers then placed him under arrest.

The state charged Wondrasek with one count of being an ineligible person in possession of a firearm in violation of Minn. Stat. § 624.713, subd. 1(2) (2014). Wondrasek moved to suppress the evidence of the firearm and to dismiss based on a lack of reasonable, articulable suspicion that criminal activity was afoot prior to the investigatory stop. The district court denied the motion and concluded that the stop was justified because Officer Allen recognized Wondrasek as a convicted felon and therefore had reasonable, articulable suspicion that he is an ineligible person in possession of a firearm. Both parties agreed that the district court's ruling on the motion to suppress was dispositive. Wondrasek waived his right to a jury trial and agreed to a stipulated-evidence trial according to Minn. R. Crim. P. 26.01, subd. 4. The district court found that Wondrasek is ineligible to possess a firearm and that he did possess it. As a result, Wondrasek was convicted.

At the sentencing hearing, the district court stayed the presumptive 60-month prison sentence, imposed a $50 fine, ordered Wondrasek to serve 365 days in the

---

[1] The dealings include a call pertaining to a medical emergency of the former owner of the home and a call to help Wondrasek corral some dogs that had escaped from the property.

workhouse, and required that he complete a chemical-dependency evaluation. The district court scheduled a follow-up hearing for 120 days after Wondrasek began to serve his time at the workhouse. At the subsequent hearing, the district court ordered Wondrasek's release from the workhouse. This appeal follows.

## D E C I S I O N

Wondrasek argues that the police lacked reasonable, articulable suspicion that criminal activity was afoot prior to performing an investigatory stop. "We review de novo a district court's determination of reasonable suspicion of illegal activity. But in that review, we accept the district court's factual findings unless they are clearly erroneous." *State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012).

Both the United States and Minnesota Constitutions protect against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Evidence resulting from an unreasonable seizure must be suppressed. *Smith*, 814 N.W.2d at 350. Searches and seizures conducted without a warrant are per se unreasonable—subject only to a few specifically established and well delineated exceptions or circumstances. *Thompson v. Louisiana*, 469 U.S. 17, 19-20, 105 S. Ct. 409, 410 (1984).

"[A]n officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop" without a warrant "when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968)). The justification for the investigatory stop must precede the stop itself. *O'Neill v. Comm'r of Pub. Safety*, 361 N.W.2d 471, 473 (Minn. App. 1985).

4

An officer seizes a citizen when the officer restrains the citizen's liberty by using physical force or a show of authority. *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). "[A] person has been seized if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *Id.* The supreme court has held that a seizure takes place when police direct an individual to stop what they are doing. *In re Welfare of E.D.J.*, 502 N.W.2d 779, 783 (Minn. 1993).

The parties agree that the investigatory stop occurred no later than when Officer Allen ordered Wondrasek to move away from the Chevy Tahoe and to put his hands where the officers could see them. The issue is whether Officer Allen had a reasonable, articulable suspicion that criminal activity was afoot to justify the investigatory stop. "Reasonable suspicion must be based on specific, articulable facts that allow the officer to be able to articulate at the omnibus hearing that he or she had a particularized and objective basis for suspecting the seized person of criminal activity." *State v. Diede*, 795 N.W.2d 836, 842-43 (Minn. 2011) (quotation omitted). While not as demanding as the probable-cause or preponderance-of-the-evidence standards, "the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123, 120 S. Ct. at 675-76. The police may seize a person if the facts objectively "support at least one inference of the possibility of criminal activity." *State v. Klamar*, 823 N.W.2d 687, 693 (Minn. App. 2012) (quotation omitted).

The district court denied Wondrasek's motion to suppress the evidence of the gun and dismiss based on its determination that Wondrasek was seized when the officers

blocked his reasonable access to the street by partially blocking the driveway and that Officer Allen had reasonable, articulable suspicion that criminal activity was afoot because he recognized Wondrasek and believed that he is a person ineligible to possess a firearm. On appeal, the state does not rely on the district court's basis for denying the motion to suppress. Instead, it argues that the investigatory stop was justified because Officer Allen had reasonable, articulable suspicion that criminal activity was afoot based on any of three other crimes: (1) recklessly handling a firearm (Minn. Stat. § 609.66, subd. 1(a)(1) (2014)); (2) illegal possession of a firearm by a minor (Minn. Stat. § 624.713, subd. 1(1) (2014)); or (3) disorderly conduct (Minn. Stat. § 609.72, subd. 1(3) (2014)).

The state's theory based on the three other crimes was not briefed or argued to the district court. Typically, we do not consider matters not argued to and considered by the district court. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). But we "may permit a party, without filing a cross-petition, to defend a decision or judgment on any ground that the law and record permit that would not expand the relief that has been granted to the party." Minn. R. Crim. P. 29.04, subd. 6. Addressing rule 29.04, subdivision 6, the supreme court has held that "[a] respondent can raise alternative arguments on appeal in defense of the underlying decision when there are sufficient facts in the record for the appellate court to consider the alternative theories, there is legal support for the arguments, and the alternative grounds would not expand the relief previously granted." *State v. Grunig*, 660 N.W.2d 134, 137 (Minn. 2003).

Wondrasek contends that this principle from *Grunig* does not permit the state to argue for the first time on appeal that other possible crimes justified an investigatory stop. Relying on *Cripps*, he contends that the officer must provide the justification for the stop at the omnibus hearing.

In *Cripps*, two police officers were enforcing the minimum-age requirement for the consumption of alcohol by asking patrons in some Mankato bars to produce identification. 533 N.W.2d at 389. Cripps showed the officers her sister's driver's license. *Id.* at 390. The officers did not think that Cripps looked like the photo on the license, and Cripps eventually admitted that she was only 20 and using her sister's identification without her permission. *Id.* Cripps was charged with three counts, including underage drinking. *Id.* Cripps moved to suppress the evidence obtained after she was asked to produce identification. *Id.* At the omnibus hearing, one of the arresting officers testified that she did not have criteria to identify the patrons who were asked to produce identification, "It was basically just the first person I came up to in the bar." *Id.* at 392. The officer did not provide any individualized suspicion with respect to Cripps. *Id.* The district court denied the motion to suppress and this court affirmed without reaching the issue of individualized suspicion. *Id.* at 390. The supreme court reversed, holding that "no evidence exist[ed] in the record with respect to [the officer's] conclusions regarding Cripps' individual appearance." *Id.* at 392.

Here, Officer Allen testified at the omnibus hearing that dispatch informed him and his partner that an anonymous person called and stated that "an adult was playing with a gun with a juvenile" in the front yard of the home. Dispatch updated the officers

7

while they were en route that the caller contacted the police again to say that the adult had placed the gun in the back of a white Chevy Tahoe. Officer Allen further testified that upon arrival, he saw an adult male and a boy standing two feet from a white Chevy Tahoe, which was consistent with the caller's information.

Under Minn. Stat. § 609.66, subd. 1(a)(1), a person is guilty of a crime if he "recklessly handles or uses a gun or other dangerous weapon or explosive so as to endanger the safety of another." "[O]ne acts recklessly by creating a substantial and unjustifiable risk that one is aware of and disregards." *State v. Engle*, 743 N.W.2d 592, 595 (Minn. 2008). The use of the word "playing" implies that the adult was behaving carelessly or indifferently with the firearm. *See The American Heritage Dictionary of the English Language* 1351 (5th ed. 2011) (defining "playing" as dealing or behaving "carelessly or indifferently"). Behaving in such a manner could create a substantial and unjustifiable risk to the safety of another.

In contrast to *Cripps*, the factual record in this case contains sufficient evidence of Officer Allen's individualized suspicion of criminal activity at the time that he arrived at Wondrasek's home. Because Officer Allen had an objectively reasonable, articulable suspicion that criminal activity was afoot before making the investigatory stop, the district court did not err by denying the motion to suppress evidence of the gun and to dismiss.

**Affirmed.**

8