*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0445**


State of Minnesota,
Respondent,

vs.

Gary Wayne Wright,
Appellant.


**Filed January 23, 2017
Affirmed
Halbrooks, Judge**


Hennepin County District Court
File No. 27-CR-15-19578

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)


Considered and decided by Rodenberg, Presiding Judge; Halbrooks, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges the district court's denial of his motion to suppress evidence, arguing that the police lacked reasonable, articulable suspicion to justify an investigatory stop and frisk of appellant. We affirm.

## FACTS

Just before midnight on July 3, 2015, a 911 caller reported that five people riding in a black Chevy Impala were acting strangely in her neighborhood. She stated that she saw someone get out of the vehicle and look into her neighbor's car. After the vehicle entered a cul de sac, she saw a white man with a shaved head, wearing a white shirt and baggy jeans, exit the vehicle and start walking around the neighborhood.

Police dispatch sent Sergeant Curtis Smith and Officer Scott Whiteford, among other officers, to respond. Sgt. Smith arrived first at the cul de sac and approached the man matching the caller's description, later identified as appellant Gary Wayne Wright. Sgt. Smith asked Wright what he was doing, and Wright replied that he was waiting for his friend, Pixie, who had gone into one of the nearby homes. Wright was unable to say which house Pixie went into and stated that he did not know Pixie's full name. Sgt. Smith observed the vehicle parked approximately 40 feet away and asked Wright whether he was affiliated with the people inside the vehicle. Wright confirmed that he was. Sgt. Smith asked Wright for his identification. Wright stated that he did not have identification but orally identified himself and his birth date. Sgt. Smith then inquired whether Wright had been arrested before. Wright said that he had previously been in prison for felony assault

with a weapon. Throughout their conversation, Sgt. Smith had to repeatedly tell Wright to keep his hands out of his pockets.

When Officer Whiteford arrived at the scene, Sgt. Smith directed him toward the parked Chevy Impala. Officer Whiteford spoke with the vehicle's occupants and asked them if they knew Wright. The occupants replied that Wright was not with them. Officer Whiteford then walked back to Sgt. Smith and informed him that the occupants were not with Wright. Officer Whiteford noticed that Wright appeared fidgety and nervous.

At this point, Sgt. Smith told Wright that he was going to be detained. Believing that Wright may have been prowling cars and may have tools, such as screwdrivers, or weapons, Sgt. Smith patted down Wright and felt what appeared to be a gun at the bottom of his pant leg. Sgt. Smith told Officer Whiteford that he felt a gun and placed Wright in handcuffs. Sgt. Smith then retrieved a loaded semi-automatic handgun from Wright's pants. He also found ten rounds of ammunition in Wright's pocket. After verifying Wright's identity and criminal history, Sgt. Smith discussed with Wright whether he was allowed to possess a firearm. Wright acknowledged that he knew it was illegal for him to possess a handgun. Sgt. Smith then placed Wright under arrest.

The state charged Wright with one count of being an ineligible person in possession of a firearm in violation of Minn. Stat. § 624.713, subd. 1(2) (2014). The case proceeded to a bench trial. But before the district court rendered a verdict, Wright requested a *Rasmussen* hearing to address whether Sgt. Smith's stop and frisk of Wright was constitutionally valid. The district court granted Wright's request and held a hearing. Wright moved the district court to suppress the evidence from the pat-down search. The

parties agreed to admit the testimony provided at the bench trial as well as the criminal complaint and the police officers' reports. After listening to the parties' oral arguments, the district court orally denied Wright's motion. The district court found that Wright is ineligible to possess a firearm and that Wright knew that he unlawfully possessed a handgun on July 3, 2015. Wright was convicted and sentenced to 60 months in prison. This appeal follows.

**D E C I S I O N**

Wright argues that the police lacked reasonable, articulable suspicion of criminal activity prior to conducting an investigatory stop and subsequent frisk. We review de novo whether a search or seizure is justified by reasonable suspicion. *State v. Burbach*, 706 N.W.2d 484, 487 (Minn. 2005). But we accept the district court's factual findings unless they are clearly erroneous. *State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012).

The Fourth Amendment to the United States Constitution and article I of the Minnesota Constitution protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A search or seizure conducted without a warrant is per se unreasonable unless it falls under one of the few established exceptions to the warrant requirement. *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). If evidence is discovered as a result of a warrantless and unreasonable search or seizure, the evidence must be suppressed. *Smith*, 814 N.W.2d at 350.

A.     **Reasonable Suspicion for Investigatory Stop**

Wright argues that he was unlawfully seized because Sgt. Smith did not have reasonable, articulable suspicion that criminal activity was afoot. A seizure occurs "when

the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn. 1993) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879 n.16 (1968)). In other words, "a person has been seized if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995).

Citing *Cripps*, Wright contends that Sgt. Smith seized him when Sgt. Smith asked for his identification. *See id.* In *Cripps*, a police officer asked the defendant, who was drinking alcohol at a bar, to produce identification to ensure that she met the age requirement for alcohol consumption. *Id.* at 389. The defendant gave false information and was then arrested. *Id.* at 389-90. The supreme court determined that the request for identification was "more than a simple inquiry into [the defendant's] identity, but a request "to prove . . . her innocence of the crime of underage consumption of alcohol." *Id.* at 391. The supreme court held that the request constituted a seizure because "an objectively reasonable person would have believed that he or she was neither free to disregard the officer's request nor free to terminate the encounter." *Id.* Unlike in *Cripps*, Sgt. Smith's request for Wright's identification was a simple inquiry into Wright's identity. Therefore, we conclude that *Cripps* is distinguishable.

Here, the district court denied Wright's motion to suppress the evidence, stating, "This was an investigatory stop." We agree. Notwithstanding how Wright characterizes the encounter, we agree with the state that we must determine whether Sgt. Smith had a

5

reasonable, articulable suspicion of criminal activity when he stopped and subsequently conducted a protective frisk of Wright. A limited investigatory stop is an exception to the warrant requirement if the state can demonstrate that the police officer had specific and articulable facts that created a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Pike*, 551 N.W.2d 919, 921 (Minn. 1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18, 101 S. Ct. 690, 695 (1981)). A brief investigatory stop requires only reasonable suspicion, a standard less demanding than probable cause. *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008); *Pike*, 551 N.W.2d at 921-22.

In this case, dispatch informed Sgt. Smith that the identified caller saw someone get out of a black Chevy Impala and look into her neighbor's car. The caller also told the dispatcher, who relayed the information to Sgt. Smith, that the Chevy Impala was parked in a nearby cul de sac and that an individual got out of the vehicle. The caller described the individual as a white male with a shaved head who was wearing a white shirt and baggy jeans. When Sgt. Smith arrived at the scene, he saw the individual, later identified as Wright, and the vehicle, both matching the caller's description.

Wright argues that Sgt. Smith did not have reasonable suspicion to conduct an investigatory stop because looking into a person's car is not illegal conduct. But reasonable suspicion does not require that criminal activity has already occurred, only that criminal activity may be afoot. *See Cortez*, 449 U.S. at 417, 101 S. Ct. at 695 ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity."). Though the police cannot rely on a "hunch"

to justify seizing a person, the police may seize that person if objective facts "support at least one inference of the possibility of criminal activity." *State v. Klamar*, 823 N.W.2d 687, 693 (Minn. App. 2012) (quotation omitted).

Here, Sgt. Smith had a reasonable inference, supported by particularized facts, that Wright may have been prowling cars in search of items to steal. It was nearly midnight when the caller, whose credibility was never challenged, told dispatch that she witnessed a person exit the black Chevy Impala and look into her neighbor's car. While it is unclear whether Wright was the person who looked into the car, Wright did inform Sgt. Smith that he was with the individuals in the Chevy Impala. Sgt. Smith asked Wright what he was doing and he responded that he was waiting for a female named Pixie who was in a nearby home. But Wright was unsure which house Pixie was in and did not know Pixie's last name. Sgt. Smith testified that, based on his training and experience, along with the detail provided in the 911 call, his suspicions were raised by how Wright's answers to his questions raised his suspicions. *See State v. Britton*, 604 N.W.2d 84, 88-89 (Minn. 2000) ("We are deferential to police officer training and experience and recognize that a trained officer can properly act on suspicion that would elude an untrained eye."). Sgt. Smith also had to tell Wright at least a couple of times to keep his hands out of his pockets. Under these circumstances, Sgt. Smith had reasonable, articulable suspicion to conduct an investigatory stop.

**B.     Reasonable Suspicion for Subsequent Frisk**

Wright argues that even if Sgt. Smith's stop of Wright was justified, Sgt. Smith lacked reasonable, articulable suspicion to support the pat-down search or "*Terry* frisk" of

Wright. Another exception to the Fourth Amendment's warrant requirement permits a police officer to conduct a protective but limited pat-down search of an individual for weapons. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992). *Terry* establishes that "police may stop and frisk a person when (1) they have a reasonable, articulable suspicion that a suspect might be engaged in criminal activity and (2) the officer reasonably believes the suspect might be armed and dangerous." *Id.* (citing *Terry*, 392 U.S. at 30, 88 S. Ct. at 1884). The search is limited to patting down the individual's outer clothing in order to determine if they are armed. *See State v. Harris*, 590 N.W.2d 90, 104 (Minn. 1999). But if, during the pat-down search, the officer locates an object that gives him probable cause to believe that it is evidence of a crime, the officer may seize the object. *Id.*

As previously discussed, Sgt. Smith had a reasonable suspicion that Wright was engaging or about to engage in criminal activity when he conducted the stop. His suspicion was further raised when, prior to the frisk, Officer Whiteford notified him that the individuals in the black Chevy Impala told Officer Whiteford that they were not associated with Wright. This informed Sgt. Smith that either Wright or the individuals with whom he claimed to be affiliated were not being entirely truthful. Officer Whiteford also noticed that Wright appeared nervous and was fidgeting with his hands.[1] These facts further

---

[1] A person's nervous demeanor is not a strong indication to support an officer's suspicion of criminal activity. *See Burbach*, 706 N.W.2d at 490 (noting Minnesota courts' reluctance to rely on nervous behavior to support finding reasonable suspicion). But, in this case, the combined circumstances of Wright's fidgeting in addition to Sgt. Smith having to repeatedly tell Wright to remove his hands from his pockets may lead an officer to reasonably believe that Wright may be involved in criminal activity or armed with a weapon. *See State v. Martinson*, 581 N.W.2d 846, 852 (Minn. 1998) (stating that in

8

support the district court's conclusion that Sgt. Smith had reasonable suspicion sufficient to detain Wright and conduct a pat-down search.

Wright next argues that Sgt. Smith could not have reasonably believed that Wright was either armed or dangerous. But based on Sgt. Smith's experience, he knew that individuals who prowl cars tend to carry burglary tools or weapons. And Wright's repeated fidgeting with his pockets, even after Sgt. Smith told him to keep his hands out of his pockets, may have alerted Sgt. Smith that Wright may be armed with a weapon. *See State v. Flowers*, 734 N.W.2d 239, 252 (Minn. 2007) (noting that the defendant's "suspicious movements" and failure to comply with the police officers' requests made it reasonable for the officers to fear for their safety). It was reasonable for Sgt. Smith to be concerned for his safety as well as the safety of the other officers at the scene. Under these circumstances, Sgt. Smith had sufficient reasonable suspicion, supported by particularized and objective facts, that Wright may be involved in criminal activity and may be either armed or dangerous. Sgt. Smith's decision to conduct a pat-down search of Wright was justified.

Because Sgt. Smith had reasonable, articulable suspicion that criminal activity was afoot prior to stopping Wright and before conducting a pat-down search, we conclude that the district court did not err by denying Wright's motion to suppress the evidence.

**Affirmed.**

---

applying the reasonable suspicion standard, Minnesota courts examine the totality of the circumstances).

9